DISCIPLINARY COUNSEL *v.* OHLIN.

[Cite as *Disciplinary Counsel v. Ohlin*, 126 Ohio St.3d 384, 2010-Ohio-3826.]

*Attorneys — Misconduct — Failure to provide competent representation — Failure to act with reasonable diligence — Failure to inform client of lack of malpractice insurance — Neglect of entrusted legal matter — Failure to seek client's lawful objectives — Intentional failure to carry out contract of employment — Failure to cooperate with disciplinary investigation — Indefinite suspension.*

(No. 2010-0287 — Submitted March 31, 2010 — Decided August 24, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-061.

————————————

**Per Curiam**.

{¶ 1} Respondent, Joseph David Ohlin of Warren, Ohio, Attorney Registration No. 0031532, was admitted to the practice of law in Ohio in 1985. In August 2009, relator, Disciplinary Counsel, filed a complaint charging him with violations of the Code of Professional Responsibility, the Ohio Rules of Professional Conduct, and Gov.Bar R. V(4)(G) and VI(1)(D). During the pendency of this action, we suspended respondent's license for his failure to register for the 2009/2011 attorney-registration biennium. *In re Ohlin*, 123 Ohio St.3d 1475, 2009-Ohio-5786, 915 N.E.2d 1256. We also sanctioned and suspended him for failing to comply with the continuing-legal-education requirements set forth in Gov.Bar R. X(3). *In re Ohlin*, 124 Ohio St.3d 1402, 2009-Ohio-6833, 918 N.E.2d 1010.

{¶ 2} Although relator's complaint was served by certified mail on August 19, 2009, at the address respondent has registered with the Office of

Attorney Services, he failed to file an answer. Relator filed a motion for default supported by documentary evidence, including a deposition of respondent conducted by relator in May 2009. A master commissioner appointed by the board considered the motion for default and prepared a report recommending that the board indefinitely suspend respondent. The board adopted the master commissioner's findings that the materials offered in support of the default motion were sufficient and that respondent had committed multiple violations of the ethical duties incumbent upon Ohio lawyers.

{¶ 3} In accordance with the master commissioner's report, the board now recommends that we (1) indefinitely suspend respondent from the practice of law, (2) condition his reinstatement upon submission of proof that he has resolved the problems that he claims contributed to his misconduct, and (3) require him to complete one year of monitored probation pursuant to Gov.Bar R. V(9) upon his reinstatement. Additionally, the board recommends that we require proof that respondent has made full restitution to the client discussed in Count Three.

{¶ 4} We agree that respondent has committed professional misconduct and accept the board's recommended sanction.

**Misconduct**

*Count One*

{¶ 5} In 2002, a client retained respondent's law firm to represent him in a personal-injury case. Another attorney at the firm filed a lawsuit on the client's behalf, and when that attorney left the firm, respondent assumed the representation. After respondent failed to reply to the defendants' motion to dismiss or to the defendants' motion for summary judgment, the trial court granted judgment in favor of the defendants.

{¶ 6} At his deposition, respondent acknowledged that he had received a copy of a letter of inquiry from relator forwarding the client's grievance and that he failed to respond. He further admitted that his malpractice insurance had

lapsed and that he had failed to inform the client of this fact. Although he agreed to provide additional information regarding his malpractice insurance and the client's complete case file to the relator following the deposition, he failed to do so.

{¶ 7} The board found that respondent's conduct prior to February 1, 2007, violated DR 1-104(A) and (B) (requiring a lawyer to inform a client at the time of engagement or at any time subsequent to the engagement if the lawyer does not maintain professional-liability insurance, and to keep a copy of the notice signed by the client for five years after the termination of representation), and that his conduct after February 1, 2007, violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.3 (requiring a lawyer to act with reasonable diligence and promptness in representing a client), and 1.4(c) (requiring a lawyer to inform the client at the time of the engagement or at any time subsequent to the engagement if the lawyer does not maintain professional-liability insurance) and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation). We accept these findings of misconduct.

*Count Two*

{¶ 8} The board found that in April 2005, a second client retained respondent and paid him $200 to pursue expungement of a federal criminal conviction. A year and a half after he was retained, respondent sought the assistance of another attorney. The client met with that attorney and issued a check for $400, payable to respondent. Respondent cashed the check and gave the money to the other attorney for the work he had performed. The board found that respondent failed to obtain the expungement his client sought and that he failed to return her telephone calls. At his deposition, respondent agreed to provide the client's file to relator, but failed to do so.

{¶ 9} Based upon its findings of fact, the board determined that respondent's conduct violated DR 6-101(A)(3) (prohibiting neglect of an

entrusted legal matter) and 7-101(A)(1) (prohibiting a lawyer from intentionally failing to seek the lawful objectives of his client) and Gov.Bar R. V(4)(G). However, the board concluded that the record did not support relator's allegation that respondent's conduct violated DR 7-101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of employment for legal services).

{¶ 10} While we accept most of the board's findings of fact, we note that the findings regarding the respondent's intentional failure to obtain the client's goal of expungement and his failure to return client telephone calls are not supported by the record. In *Dayton Bar Assn. v. Sebree*, 104 Ohio St.3d 448, 2004-Ohio-6560, 820 N.E.2d 318, ¶ 5, we recognized that Gov.Bar R. V(6)(F)(1)(b) "requires that a motion for default in a disciplinary proceeding be supported by '[s]worn or certified documentary prima facie evidence in support of the allegations made.' " We held that a motion for default in a disciplinary proceeding supported only by the summary, conclusory, and hearsay-filled affidavits of the relator's investigator did not satisfy this requirement. Id. at ¶ 9. Therefore, we instructed relators in future disciplinary proceedings to provide affidavits executed by the grievants themselves to support a default motion. Id.

{¶ 11} In this case, the relator has submitted only a photocopy of the client's unsworn and uncertified grievance to prove that respondent failed to return the client's phone calls and failed to achieve the object of the representation. Because relator has not submitted an affidavit from the grievant, or otherwise proven these facts with sworn or certified documentary evidence, we reject these factual findings.

{¶ 12} Nonetheless, the record contains sufficient sworn or certified evidence to support the board's other findings. Therefore, we agree that respondent's conduct violated DR 6-101(A)(3) and 7-101(A)(1) and Gov.Bar R. V(4)(G), and we dismiss the alleged violation of DR 7-101(A)(2).

*Count Three*

{¶ 13} With regard to Count Three, the board found that a third client retained respondent to represent her in a personal-injury action. Respondent settled the matter for $10,000 in September 2005. After having his client sign the settlement check, he negotiated the check in November 2005. The board found that in February 2007, more than a year after the settlement, the client threatened to file a grievance if she did not receive her share of the settlement and that several weeks later respondent delivered $800 in cash to her home. Although respondent had promised to provide the client's file to relator, he failed to do so.

{¶ 14} Based upon these factual findings, the board concluded that respondent's conduct before February 1, 2007, violated DR 6-101(A)(3), 7-101(A)(1), 7-101(A)(2), and 9-102(B)(4) (requiring a lawyer to promptly pay or deliver funds and property to which a client is entitled). The board also found that his conduct after February 1, 2007, violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold property of clients separate from the lawyer's own property) and 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive) and Gov.Bar R. V(4)(G).

{¶ 15} We agree that respondent's delay of more than a year before delivering $800 in settlement proceeds to his client violated DR 6-101(A)(3) and 9-102(B)(4) and Prof.Cond.R. 1.15(d) and that his failure to cooperate in the ensuing disciplinary investigation violated Gov.Bar R. V(4)(G).

{¶ 16} However, the relator has failed to satisfy its burden of proving the remaining allegations by clear and convincing evidence. Specifically, we observe that the record contains no sworn or certified evidence tending to demonstrate that respondent intentionally failed to seek the lawful objectives of the client, intentionally failed to carry out a contract of employment, failed to hold the client's funds separate from his own, or failed to deliver *all* of the settlement proceeds that the client was entitled to receive.

{¶ 17} On the contrary, respondent's uncontroverted, sworn deposition testimony demonstrates that he (1) filed a complaint on the client's behalf, (2) obtained a $10,000 settlement, (3) deposited the settlement check into his trust account, (4) paid the client's "very high" medical bills from the settlement proceeds, (5) distributed *more* than $800 to the client, and (6) did not use any of the money for his own expenses, with the exception of his one-third contingency fee. Accordingly, we dismiss the alleged violations of DR 7-101(A)(1) and (A)(2) and Prof.Cond.R. 1.15(a).

*Count Four*

{¶ 18} Despite having received a letter from relator seeking respondent's reply to a fourth grievance, respondent did not participate in the disciplinary investigation of that grievance. Furthermore, at his deposition, respondent agreed to provide relator with a copy of the client's file, but he failed to do so. Therefore, the board found, and we agree, that respondent has violated Gov.Bar R. V(4)(G).

*Count Five*

{¶ 19} With regard to Count Five, the board found that respondent moved in the fall of 2008 and failed to provide his new residence and business addresses to the Office of Attorney Services. As a result of this failure, respondent did not receive several of the letters that relator sent him. At his deposition, respondent agreed to update his attorney-registration records, but to date, he has not done so. Accordingly, we agree that respondent's conduct violates Gov.Bar R. VI(1)(D) (requiring attorneys to keep the Office of Attorney Services apprised of their residence and office addresses).

**Sanction**

{¶ 20} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio

St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 21}** As aggravating factors, the board found that respondent had committed multiple offenses, failed to cooperate in the disciplinary process, refused to acknowledge the wrongful nature of his conduct, and caused harm to vulnerable clients. BCGD Proc.Reg. 10(B)(1)(d), (e), (g), and (h). Respondent claimed to suffer from alcohol dependence and a mental disability. But the board declined to consider those factors in mitigation because respondent did not introduce any competent medical evidence to establish either the diagnoses or their causal connection to his misconduct. See BCGD Proc.Reg. 10(B)(2)(g)(i) and (ii). The board found no other factors weighing in favor of a lesser sanction.

**{¶ 22}** We have previously recognized that neglect of an entrusted legal matter and failure to cooperate in the ensuing disciplinary investigation generally warrant an indefinite suspension. *Disciplinary Counsel v. Hoff*, 124 Ohio St.3d 269, 2010-Ohio-136, 921 N.E.2d 636, ¶ 10; *Disciplinary Counsel v. Mathewson*, 113 Ohio St.3d 365, 2007-Ohio-2076, 865 N.E.2d 891, ¶ 19.

**{¶ 23}** Having reviewed the record, weighed the aggravating and mitigating factors, and considered the sanctions imposed for comparable conduct, we adopt the board's recommended sanction of an indefinite suspension.

**{¶ 24}** Accordingly, Joseph David Ohlin is indefinitely suspended from the practice of law in the state of Ohio. Respondent's reinstatement is conditioned upon his submission of proof that (1) any alcohol dependence and mental-health problems have been resolved, (2) he has followed all treatment recommendations, including compliance with his existing contract with the Ohio

Lawyers Assistance Program, (3) he is able to return to the competent, ethical, and professional practice of law, and (4) he has paid the client discussed in Count Three all monies that she is entitled to receive from the proceeds of her settlement. Furthermore, upon his reinstatement to the practice of law, respondent shall complete one year of monitored probation pursuant to Gov.Bar R. V(9). Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

BROWN, C.J., not participating.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Carol A. Costa, Assistant Disciplinary Counsel, for relator.

_____